No. __-____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In re Cisco Systems, Inc. and CDW Corporation,

*Petitioners*

Petition for Writ of Mandamus from the
United States District Court for the Eastern District of Texas, Texarkana Division
Civil Action No. 5:22-cv-00053-RWS-JBB,
Honorable Robert W. Schroeder, III, United States District Judge

CISCO SYSTEMS, INC.'S AND CDW CORPORATION'S
PETITION FOR WRIT OF MANDAMUS

James A. Reeder, Jr.
Jones Day
717 Texas, Suite 3300
Houston, TX 77002
(832) 239-3838
jareeder@jonesday.com

Thomas D. York
J. Benjamin Aguiñaga
Jones Day
2727 N. Harwood Street
Dallas, TX 75201
(214) 969-4523
tdyork@jonesday.com
jbaguinaga@jonesday.com

*Attorneys for CDW Corporation*

Aaron M. Panner
Andrew E. Goldsmith
Ryan M. Folio
Kellogg, Hansen, Todd,
    Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
agoldsmith@kellogghansen.com
rfolio@kellogghansen.com

Deron R. Dacus
The Dacus Firm, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1177
ddacus@dacusfirm.com

*Attorneys for Cisco Systems, Inc.*

April 24, 2023

## CERTIFICATE OF INTERESTED PERSONS

No. \_\_-\_\_\_\_

IN RE CISCO SYSTEMS, INC. AND CDW CORPORATION,

*Petitioners*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    Petitioner Cisco Systems, Inc. is a Delaware corporation with its principal place of business in San Jose, California. Cisco Systems, Inc. does not have a parent corporation, and no publicly held corporation holds more than 10% of its stock.

2.    Cisco Systems, Inc. is represented by attorneys Aaron M. Panner, Andrew E. Goldsmith, Kylie Chiseul Kim, Alex A. Parkinson, Ryan M. Folio, Caroline A. Schechinger, D. Chanslor Gallenstein, and Jonathan I. Liebman of Kellogg, Hansen, Todd, Figel & Frederick PLLC, 1615 M Street, N.W., Suite 400, Washington, D.C. 20036; Louis Feuchtbaum and Richard J. Nelson of Sideman & Bancroft LLP, One Embarcadero Center, Twenty-Second Floor, San Francisco, CA 94111; and Deron Dacus of The Dacus Firm, PC, 821 ESE Loop 323, Suite 430, Tyler, TX 75701.

3.      Petitioner CDW Corporation is a Delaware corporation with its principal place of business in Lincolnshire, Illinois.  CDW Corporation does not have a parent corporation.  The Vanguard Group owns 11.5%[*] of the stock of CDW Corporation as reported in CDW's 2022 Proxy Statement.

4.      CDW Corporation is represented by James A. Reeder, Jr. of Jones Day, 717 Texas, Suite 3300, Houston, TX 77002; Thomas D. York and J. Benjamin Aguiñaga of Jones Day, 2727 N. Harwood Street, Dallas, TX 75201; and Jennifer H. Doan and Cole A. Riddell, of Haltom & Doan, 6500 Summerhill Road, Suite 100, Texarkana, TX 75503.

5.      Respondent Dexon Computer, Inc. is a Minnesota corporation with its principal place of business in Bloomington, Minnesota.  Dexon Computer, Inc. does not have a parent corporation, and no publicly held corporation holds more than 10% of its stock.

6.      Dexon Computer, Inc. is represented by attorneys David H. Reichenberg, Matthew F. Bruno, and Tina P. Lapsia of Manatt, Phelps & Phillips,

---

[*] Based on a Schedule 13G/A filed by The Vanguard Group with the SEC on February 9, 2022, reporting beneficial ownership as of December 31, 2021.  The Vanguard Group reported that it has shared voting power with respect to 231,778 shares of CDW Corporation common stock, sole dispositive power with respect to 14,961,098 shares of CDW Corporation common stock, and shared dispositive power with respect to 565,713 shares of CDW Corporation common stock.

LLP, 7 Times Square, New York, NY 10036; and William E. Davis of The Davis

Firm P.C., 213 N. Fredonia Street, Suite 230, Longview, TX 75601.


/s/ *Aaron M. Panner*
Aaron M. Panner

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Petitioners Cisco Systems, Inc. and CDW Corporation respectfully request oral argument under Fifth Circuit Rule 28.2.3.  Oral argument likely will prove helpful to the Court because this case involves important legal issues related to transfer under the first-to-file rule.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................... iv

TABLE OF AUTHORITIES ................................................................................. vi

STATEMENT OF THE ISSUE PRESENTED ......................................................1

JURISDICTIONAL STATEMENT .......................................................................1

INTRODUCTION .................................................................................................2

STATEMENT OF THE FACTS ...........................................................................5

STANDARD FOR MANDAMUS .......................................................................15

REASONS THE WRIT SHOULD ISSUE ...........................................................16

I.     Petitioners' Right To The Writ Is Clear Because The Terms And
       Reasoning Of The First-To-File Rule Require Transfer ..............................17

       A.     This Court's Precedents Clearly Establish The Contours Of –
              And Strong Policy Behind – The First-To-File Rule .........................17

       B.     The First-To-File Rule Unquestionably Applies Here ......................22

       C.     The District Court's Failure To Transfer Was Based On Clear
              Legal Error And Was An Abuse Of Discretion .................................26

II.    Petitioners Have No Other Adequate Means For Relief From The
       Court's Failure To Transfer ........................................................................28

III.   The Writ Is Appropriate To Deter Abusive Litigation Conduct ..................29

CONCLUSION ...................................................................................................32

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Burdett Sound, Inc. v. Altec Corp.*,
515 F.2d 1245 (5th Cir. 1975) ..................................................... 14

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ........... 2, 3, 4, 11, 20, 21, 23, 24, 25, 27, 29, 30

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004).............................................................. 15, 17

*Cisco Sys., Inc. v. Dexon Computer, Inc.*:

2022 WL 797015 (N.D. Cal. Mar. 16, 2022) ...................................... 3, 8, 23

2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) ............................. 3, 7, 8, 24, 25

*De Beers Consol. Mines, Ltd. v. United States*,
325 U.S. 212 (1945)....................................................................... 26

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ................................................... 5, 28

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*,
123 F.3d 301 (5th Cir. 1997) ......................................................... 14

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992)....................................................................... 25

*Hernandez v. DMSI Staffing, LLC*,
79 F. Supp. 3d 1054 (N.D. Cal. 2015),
*aff'd*, 677 F. App'x 359 (9th Cir. 2017) ........................................ 9

*Horseshoe Ent., In re*,
337 F.3d 429 (5th Cir. 2003) ......................................................... 2

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952)....................................................................... 2

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957)............................................................ 29, 31

*Lloyd's Reg. N. Am., Inc., In re*,
    780 F.3d 283 (5th Cir. 2015) ............................................. 5

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ............................................. 17, 25

*McCullough v. Cosgrave*,
    309 U.S. 634 (1940)........................................................... 31

*Nitro Fluids, L.L.C., In re*,
    978 F.3d 1308 (Fed. Cir. 2020) ......................................... 26, 29

*Radmax, Ltd., In re*,
    720 F.3d 285 (5th Cir. 2013) ......................................... 5, 28, 31

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
    41 F.4th 1372 (Fed. Cir. 2022) .......................................... 31

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943)............................................................. 2

*Rolls Royce Corp., In re*,
    775 F.3d 671 (5th Cir. 2014) ............................................. 17, 28

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ...................................... 19, 20, 22, 24

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    2020 WL 6889173 (E.D. Tex. Nov. 24, 2020)..................... 12, 26

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) ............................................. 20

*Volkswagen AG, In re*,
    371 F.3d 201 (5th Cir. 2004) ............................................. 31

*Volkswagen of Am., Inc., In re*,
    545 F.3d 304 (5th Cir. 2008) ..................................... 17, 28, 29, 31

*West Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*,
       751 F.2d 721 (5th Cir. 1985) ........................................ 2, 4, 18, 19, 22, 23, 30

## STATUTES

All Writs Act, 28 U.S.C. § 1651(a)............................................................ 1

28 U.S.C. § 1292(b) .................................................................................. 29

28 U.S.C. § 1331 ........................................................................................ 1

28 U.S.C. § 1332 ........................................................................................ 1

28 U.S.C. § 1404 ...................................................................................... 28

28 U.S.C. § 1404(a) ................................................................................. 29

## OTHER MATERIALS

Motion for Partial Reconsideration, *SIMO Holdings, Inc. v. Hong Kong
       uCloudlink Network Tech. Ltd.*, No. 2:20-cv-00003 (E.D. Tex. Dec. 18,
       2020), Dkt. 55 ................................................................................ 13

Order, *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No.
       2:20-cv-00003 (E.D. Tex. Mar. 16, 2021), Dkt. 77...................................... 13

## STATEMENT OF THE ISSUE PRESENTED

Petitioner Cisco Systems, Inc. ("Cisco") sued Respondent Dexon Computer, Inc. ("Dexon") in the Northern District of California[1]; Dexon filed antitrust counterclaims, which the California court dismissed with leave to amend.  Rather than reassert those counterclaims in California, and while the California litigation remained pending, Dexon refiled the claims against Cisco and Petitioner CDW Corporation ("CDW") in the Eastern District of Texas.[2]  Cisco, joined by CDW, moved to transfer the case to the Northern District of California under the first-to-file rule.  The district court denied Cisco's motion.

The issue presented is:

Whether mandamus is warranted to reverse the denial of a motion to transfer under the first-to-file rule when a party asserts claims in a second federal court, having previously asserted the claims in a first federal court where litigation between the parties remains pending.

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332.  This Court has jurisdiction under the All Writs Act, 28 U.S.C.

---

[1] *Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 20-cv-04926 (N.D. Cal.) ("N.D. Cal. Dkt.").

[2] *Dexon Computer, Inc. v. Cisco Sys., Inc.*, No. 22-cv-00053 (E.D. Tex.).

§ 1651(a).  *See In re Horseshoe Ent.*, 337 F.3d 429, 431 (5th Cir. 2003) (per curiam) (holding this Court has jurisdiction to grant mandamus reversing transfer denial); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943) (jurisdiction to grant mandamus exists even if "no appeal has been perfected").

## INTRODUCTION

"The federal courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." *West Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 728 (5th Cir. 1985) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).  The first-to-file rule reflects that important principle:  it provides that "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.*

In denying Cisco's motion to transfer under the first-to-file rule, the district court misunderstood both the plain language of this Court's precedents and the "principles of comity and sound judicial administration" on which the first-to-file

rule rests.  *Id.*  Cisco sued Dexon, a reseller of computer networking equipment, in the Northern District of California based on Dexon's alleged sales of counterfeit Cisco equipment – that is, purported Cisco equipment that is not actually manufactured by Cisco in whole or in part.  Dexon counterclaimed, alleging violations of Sections 1 and 2 of the Sherman Act and California antitrust law (among other claims).  In its counterclaims, Dexon alleged that its antitrust claims "arise out of the same controversy as [Cisco's] Federal claims."  App.131 (¶ 13).

The California court (Breyer, J.) dismissed Dexon's antitrust counterclaims with leave to amend, holding that Dexon failed to allege unlawful tying, unlawful monopolization, or antitrust injury.  *See generally Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2021 WL 5848080 (N.D. Cal. Dec. 9, 2021).  Dexon amended but chose not to reassert its antitrust counterclaims.  App.208.  Judge Breyer once again dismissed Dexon's counterclaims and gave Dexon leave to amend "one last time."  *Cisco Sys., Inc. v. Dexon Computer, Inc.*, 2022 WL 797015, at *8 (N.D. Cal. Mar. 16, 2022).  At that point, Dexon filed antitrust claims in the Eastern District of Texas.  App.1.  Judge Breyer, who ultimately dismissed all of Dexon's counterclaims without leave to amend, later criticized Dexon's Texas lawsuit as "duplicative" and an "apparent attempt[] to seek repeated bites at the apple." App.360.  Cisco moved to transfer the Texas case under the first-to-file rule, App.42, and CDW filed a notice of joinder, App.580.

3

The district court denied the motion, first in an order by the Magistrate Judge and then in an order by the district court overruling the defendants' objections.  App.719, 872.  In so doing, the district court misapplied this Court's precedents:  although this Court has held that the first-to-file rule applies "when related *cases* are pending before two federal courts," *Cadle*, 174 F.3d at 603 (emphasis added), the district court held that the rule applies only if the specific *claim* asserted in the second-filed case is still pending in the first-filed case – even if (as here) the only reason the specific claim is no longer pending is that the court in the first-filed case dismissed it.  App.886.  That limitation finds no support in this Court's precedents.

The district court's denial also implicates the precise comity and judicial-administration concerns that animate the first-to-file rule.  Allowing Dexon's lawsuit to proceed in Texas "trench[es] upon the authority of" the federal court in California, which had ruled that Dexon would not be permitted to pursue further amendments of its counterclaims.  *West Gulf*, 751 F.2d at 729.  And, by endorsing the legal sufficiency of the same allegations that the federal court in California dismissed, the Texas court functioned as a "super appellate court," creating the very type of conflict and "inconsistency" that the first-to-file rule is "designed to prevent."  *Cadle*, 174 F.3d at 604, 606 (cleaned up).

Despite the high bar for mandamus, it is warranted here. This Court has often granted mandamus to reverse orders denying transfer, precisely because later review is unlikely to provide a remedy. *See In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam) ("This mandamus requirement is satisfied in the motion-to-transfer context."). And this issue is important not only for the parties but also for the judicial system itself: if permitted to proceed in Texas, Dexon has drafted a roadmap for evasion of unfavorable rulings, inviting forum-shopping, ensuring inefficiency, and undermining the authority of the federal courts. *See In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015) (writ "especially appropriate where its issuance will have significance beyond the immediate case") (cleaned up); *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022) (granting writ to address "tactics suggesting the abusive manipulation of federal court procedures").

This Court should grant the writ, vacate the order denying transfer, and instruct the district court to transfer this case to the United States District Court for the Northern District of California.

## STATEMENT OF THE FACTS

**A.    The California Litigation:**  Cisco is a leading innovator of technologies at the heart of modern communications and IT infrastructure. App.14 (¶ 42). Among other products, Cisco manufactures network routers, switches, IP

telephony, and related software.  App.8 (¶ 23).  As a manufacturer of critical

infrastructure products, Cisco has an interest in ensuring that end users of its

products purchase genuine Cisco equipment and have access to customer service

and technical support.  App.11 (¶ 31); App.403 (¶ 2).  To promote those goals,

Cisco has instituted a robust network of authorized distributors and resellers.

App.227 (¶ 121).  Other than these authorized sellers, there are many unauthorized

resellers who sell Cisco-branded equipment that has been diverted from authorized

channels, including "secondary market" equipment sold abroad and reimported as

well as used equipment that has not been certified or relicensed.  App.226-227

(¶ 117).  Cisco also faces significant issues with resellers that traffic in counterfeit

"Cisco" products.  App.227 (¶¶ 120-122).

Dexon is one such unauthorized reseller.  App.227 (¶ 118).  Confronted with

evidence that Dexon had repeatedly sold counterfeit "Cisco" equipment, Cisco

sued Dexon in the California federal court on July 22, 2020, alleging violations of

the Lanham Act and California state law.  App.402.

Dexon moved to dismiss for lack of personal jurisdiction; the district court

authorized limited discovery and then denied the motion.  *See* N.D. Cal. Dkt. 40

(June 1, 2021).  With its answer, Dexon filed counterclaims, *see id.* Dkt. 43 (June

17, 2021), which it quickly amended, App.111.[3]  Dexon claimed that Cisco

violated Sections 1 and 2 of the Sherman Act and the California Cartwright Act in

two ways.  *First*, Cisco allegedly refused to honor service contracts covering Cisco

products that Dexon sold to its customers unless the customers agreed to buy new

products from a Cisco-authorized reseller.  Dexon characterized this conduct as

"tying" Cisco equipment to Cisco service contracts.  App.145 (¶ 62).  *Second*,

Cisco allegedly discouraged customers from dealing with Dexon.  In addition to

these antitrust claims, Dexon also sought a declaratory judgment and asserted

claims under the Lanham Act and state statutory and common law.  App.152-66

(¶¶ 92-170).  Dexon alleged that its "counterclaims arise out of the same

controversy as [Cisco's] Federal claims."  App.131 (¶ 13).

Cisco moved to dismiss the amended counterclaims, App.174, and the

district court granted the motion with leave to amend, *Cisco*, 2021 WL 5848080, at

*5-6.  The court held that Dexon failed to allege any unlawful tying.  Noting that

"[t]o pass a motion to dismiss, a plaintiff 'must allege an actual adverse effect on

competition,'" the court held that "Dexon does not allege that the supposed tie had

any adverse effect on competition."  *Id.* at *4.  The court reasoned that while

---

[3] Dexon also asserted third-party claims against various suppliers, alleging that, if Dexon sold counterfeit equipment, it was their fault.  App.168 (¶ 192) ("Dexon relied . . . on the Third Party Defendants in procuring or obtaining such products.").  Dexon continues to pursue its third-party claims in California.

Dexon had alleged that Cisco's policies had cost *Dexon* sales of *Cisco* equipment, it failed to allege that Cisco's *competitors* – that is, other manufacturers of networking equipment like Hewlett Packard Enterprise, Dell, and Juniper – "lost a sale." *Id.* The court also held that Dexon's alleged tie "makes no logical sense." *Id.* at *5. As for Dexon's monopolization and attempted monopolization claims, the court likewise reasoned that although "Cisco's conduct apparently led some customers to purchase Cisco equipment from suppliers other than Dexon . . . this had no effect on Cisco's competitors." *Id.* Here, too, the court remarked that Dexon's theory made "little economic sense." *Id.* Finally, the court ruled that all of Dexon's antitrust claims failed "because Dexon ha[d] not pleaded antitrust injury." *Id.* at *6.

Dexon filed second amended counterclaims that included counts under the Lanham Act and state common law but that omitted any antitrust counts. *See* App.208. The district court dismissed those counterclaims as well and gave Dexon "leave to amend *one last time*." *Cisco*, 2022 WL 797015, at *8 (emphasis added). Dexon amended and did not reassert its antitrust counterclaims. App.260. Cisco again moved to dismiss.[4] App.314. Before the court ruled, Dexon moved for leave to file *fourth* amended counterclaims. App.335.

---

[4] On the same day (as described further below) Dexon filed its Texas case.

The district court dismissed Dexon's third amended counterclaims "without leave to amend" and denied its motion for leave to file fourth amended counterclaims.  App.345, 361.  The court noted that, after filing its third amended counterclaims, "Dexon filed a new suit in the Eastern District of Texas asserting claims *duplicative* of those in this case – including some of the counterclaims that this Court has already dismissed[.]"  App.360 (emphasis added).  The court stated that "Dexon's apparent attempts to seek *repeated bites at the apple* would weigh in support of denying leave," citing *Hernandez v. DMSI Staffing, LLC*, 79 F. Supp. 3d 1054, 1059 (N.D. Cal. 2015), *aff'd*, 677 F. App'x 359 (9th Cir. 2017), a case that denied leave to amend in part because "the facts suggest that Plaintiff has engaged in *forum-shopping*."  App.360 (emphases added).  Dexon moved for reconsideration, which the court denied.  *See* N.D. Cal. Dkt. 138 (July 26, 2022).

The parties are engaged in discovery in the California case; a trial date has not yet been set.

**B.    The Eastern District of Texas Complaint:**  While its third amended counterclaims were pending in the Northern District of California, Dexon sued Cisco and a Cisco-authorized reseller, CDW, in the Eastern District of Texas, asserting against Cisco the same claims for tying, monopolization, and attempted monopolization that it had asserted against Cisco in California.  App.1.  The complaint alleges the same relevant markets for network equipment (adding an

alleged market for IP phones), again claims violations of Sections 1 and 2 of the

Sherman Act and state antitrust law (now Texas rather than California), and

includes the same factual allegations – many reproduced word-for-word – to

support these claims. *See*, *e.g.*, App.71-83, 90-93, 96-107 (redline comparison).

Dexon added two counts asserting that Cisco and CDW conspired not to

supply Dexon with Cisco products and to take away one of Dexon's sales.

App.29-31 (¶¶ 87-100). In support, Dexon repeated allegations from its California

counterclaims about a previously unnamed authorized reseller; the substance of the

factual allegations was unchanged. App.51.

Although Dexon alleged that "many of the actions and activities complained

of in this Complaint occurred and are occurring in this District," App.7 (¶ 21),

Dexon did not allege that any of the incidents described in its complaint occurred

in the Eastern District of Texas specifically – some occurred elsewhere in the

State, some occurred in Pennsylvania and Maryland; Dexon is based in Minnesota;

Cisco is based in California; and CDW is based in Illinois.[5]

---

[5] On March 13, 2023, Cisco notified Dexon that information and documents
it provided in discovery do not support its allegation (and arguments in opposition
to transfer) that "many" of the alleged incidents occurred in the Eastern District of
Texas. App.981; *see also* App.570 ("Dexon appropriately filed a suit in this forum
because that is where trial belongs under the facts."). On April 3, 2023 – almost
one year after Dexon filed the complaint – Dexon admitted that it was unaware of
any alleged conduct that occurred in the Eastern District of Texas and said it
"intended to state that Cisco's conduct has occurred and continues to occur
throughout *the State of Texas*." App.985 (emphasis added). Dexon committed to

**C.    The Motion To Transfer:**  Cisco moved to transfer Dexon's antitrust claims to California under the first-to-file rule, which requires transfer "when related cases are pending before two federal courts" and "the issues raised by the cases substantially overlap."  *Cadle*, 174 F.3d at 603; *see also* App.42.  Cisco also moved to dismiss.  App.362.  CDW later filed a notice joining in Cisco's transfer motion and filed its own motion to dismiss.  App.580, 583.

The Magistrate Judge denied the motion to transfer.  *See* App.719.  The order did not question (despite Dexon's arguments) that there was substantial overlap between the antitrust claims before it and those that were subject to the California court's prior ruling.  Instead, the order held that because the first-to-file rule is "a forward-looking doctrine," App.731 (citing *Cadle*, 174 F.3d at 603-04), it does not apply when the first-filed court already dismissed substantially similar claims, even if the case in which it did so is still pending.  App.729 ("the co-pending actions must also have co-pending claims that are substantially similar").  Because the California court dismissed Dexon's antitrust counterclaims, the order reasoned that there was no "risk of piecemeal litigation or inconsistent outcomes," and the first-to-file rule was inapplicable.  App.732.  The order did not address Cisco's argument that, even setting aside the dismissed antitrust counterclaims,

---

"make appropriate clarifications in its upcoming Amended Complaint" but refused to strike the false allegation from the operative complaint.  App.985.

"[t]he close legal nexus between Cisco's Lanham Act claims" and Dexon's antitrust claims meant that trying the two sets of claims separately would create a "risk of inconsistent results."  App.58; App.616 (explaining that if Dexon's antitrust claims were "not transferred, Cisco could raise Dexon's distribution of counterfeit and unlicensed Cisco products as defenses" in Texas).  The order likewise made no mention of Dexon's prior allegation that the counterclaims it had filed in California arose from the same controversy from which Cisco's claims arose.  App.131 (¶ 13).

Cisco, joined by co-defendant CDW, objected to the Magistrate Judge's order, App.733; the district court denied the objection, App.872.  The court ruled that "the proper comparison for application of the forward-looking first-to-file rule is between Cisco's *presently pending* IP claims in California and Dexon's antitrust claims in this Court."  App.890 (emphasis added).  Like the Magistrate Judge, the court relied mainly on a district-court decision denying transfer under the first-to-file rule because the first-filed *suit* was no longer pending.  *See SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd*., 2020 WL 6889173 (E.D. Tex. Nov. 24, 2020) (Gilstrap, J.) ("*SIMO*").  The court noted that the first-filed suit in *SIMO* was, in fact, still pending – even though the *SIMO* court had (mistakenly) believed that the first-filed suit was *not* still pending and had expressly ruled on

that understanding.[6]  App.885-886.  The court rejected Cisco's argument that this Court's decision in *Cadle* required transfer, emphasizing that this Court "distinguishe[d] the forward-looking first-to-file rule from the backward-looking doctrine of collateral estoppel."  App.890.  Like the Magistrate Judge, the district court did not address Cisco's arguments that Dexon's antitrust claims also overlap with Cisco's pending Lanham Act claims; as a result, it incorrectly asserted that "nowhere in [its] objection do[es Cisco] argue [its] presently pending claims in California are substantially similar to Dexon's antitrust claims in this case." App.887-888.  The court also did not address Dexon's prior allegation that its antitrust claims "arise out of the same controversy" as Cisco's Lanham Act claims. App.131 (¶ 13).

**D.     The Motion To Dismiss:**  Several weeks after denying the motion to transfer, the Magistrate Judge's Report and Recommendation ("R&R") recommended denial of defendants' motions to dismiss.  App.748.  The district court then denied the motions to dismiss in the same order in which it overruled defendants' objections to the Magistrate Judge's order denying transfer.  App.872.

---

[6] The movant in *SIMO* brought this error to the district court's attention in a motion for reconsideration.  *See* Motion for Partial Reconsideration at 4, *SIMO*, No. 2:20-cv-00003, Dkt. 55 (E.D. Tex. Dec. 18, 2020).  The district court denied reconsideration because the argument had not been pressed in the original motion to transfer.  *See id.*, Dkt. 77 at 5 (E.D. Tex. Mar. 16, 2021).

Reviewing the R&R de novo, the court first ruled that "dismissal on claim preclusion grounds at this stage would be premature" because "[l]ooking to the pleadings and viewing them in the light most favorable to Dexon, a true res judicata defense does not appear clearly on the face of the pleadings."  App.896 (cleaned up).  The court said that "[i]t is not clear" that the California decision "satisfies the finality requirement," App.896, because the California court dismissed Dexon's antitrust counterclaims with leave to amend, and further questioned whether the new antitrust claims were "based on the same nucleus of operative facts" as the earlier claims.  App.898.

On the merits of Dexon's antitrust claims, the district court likewise adopted the R&R.[7]  The district court ruled that Dexon had adequately alleged antitrust injury.  Notwithstanding the California court's ruling (based on the same alleged conduct) that Dexon had failed to allege antitrust injury, the district court reasoned that "antitrust injury is not typically resolved through motions to dismiss," apparently credited Dexon's argument that its "reputation as a trusted multi-vendor

---

[7] The district court first rejected defendants' arguments regarding the sufficiency of Dexon's allegations of unlawful conspiracy between Cisco and CDW, rejecting (among other arguments) the assertion that this Court's decisions in *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, 123 F.3d 501 (5th Cir. 1997), and *Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245 (5th Cir. 1975), render a manufacturer's decision to sell through one reseller rather than another per se lawful under the antitrust laws.  App.901-920.

reseller" had been harmed, and accordingly found that Dexon adequately alleged antitrust injury.  App.924-925.

Turning to Dexon's claims against Cisco for tying, monopolization, and attempted monopolization, although the California court had rejected these claims, the district court adopted the recommendation to deny Cisco's motion to dismiss. App.925-936.  The court noted approvingly that the Magistrate Judge had "only revisit[ed] specific findings of the California Court to the extent there was a compelling reason to do so."  App.932.  Although Cisco showed that the California court considered and rejected all of the arguments that the Magistrate Judge accepted, the district court found "no conflict between the R&R and the substantive rulings of the California Court."  App.933; *see also* App.833-835, 837-838.

## STANDARD FOR MANDAMUS

A court may issue a writ of mandamus on three conditions:  (1) the petitioner's right to the writ is clear and indisputable; (2) the petitioner has no other adequate means to attain relief; and (3) the writ is appropriate under the circumstances.  *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). "These hurdles, however demanding, are not insuperable."  *Id.* at 381.

## REASONS THE WRIT SHOULD ISSUE

Mandamus is warranted because the district court's refusal to transfer Dexon's claims to the Northern District of California, where Dexon first filed them, misapplies this Court's precedents and is clearly erroneous.  Furthermore, the exercise of the mandamus power – despite its rarity – is justified here both because Cisco and CDW have no adequate alternative remedy and because, unless corrected, Dexon's abusive litigation tactics will invite other litigants to follow the same path.

Dexon first filed its antitrust claims in California, alleging that those claims arose out of the same controversy as Cisco's affirmative claims (which are still pending); it opposed Cisco's motion to dismiss those antitrust claims, and it lost on the merits.  At that point, Dexon could have amended its antitrust counterclaims to try to overcome the pleading deficiencies that the district court identified; it could have sought reconsideration; or it could have asked the court to enter partial final judgment under Rule 54(b) and appealed.  But what it should not have been permitted to do was refile substantially overlapping claims in a second federal district court.  This is not garden-variety forum-shopping; it is an affront to the authority of the district court in which Dexon first pursued its claims.

Petitioners responded to this improper gambit as this Court has directed:  by "rely[ing] on the discretion of the court in the second-filed action" to apply this

Court's precedents and transfer the case. *West Gulf*, 751 F.2d at 732. Because that effort failed – and because the prescribed avenue for review of an erroneous denial of a motion to transfer is mandamus, *see In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) – Petitioners now seek that relief.

## I.    Petitioners' Right To The Writ Is Clear Because The Terms And Reasoning Of The First-To-File Rule Require Transfer

Petitioners can satisfy their "burden of showing that [their] right to issuance of the writ is clear and indisputable" because the district court's failure to transfer the case under the first-to-file rule was a "clear abuse of discretion." *Cheney*, 542 U.S. at 380-81 (cleaned up). This is so both because the district court "relie[d] on erroneous conclusions of law" and because its decision "produce[d] a patently erroneous result." *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014) (quoting *Volkswagen*, 545 F.3d at 310).

### A.    This Court's Precedents Clearly Establish The Contours Of – And Strong Policy Behind – The First-To-File Rule

This Court has long recognized that when a suit is filed in a federal district court that raises issues already implicated by a case pending in another district, the proper course – at least absent "compelling circumstances" – is for the court in the later-filed case to defer to the authority of the court presiding over the first-filed case. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

17

For example, in *Mann*, the plaintiff was a patent owner who had been sued in a declaratory-judgment action in federal district court in New York and enjoined from suing on the patent at issue (the '405 patent) in Texas. The plaintiff then sued in federal court in Texas on a second patent (the '821 patent), alleging infringement based on the same acts that it claimed infringed the '405 patent. *See id.* at 406. The Texas federal court issued the plaintiff an injunction, but this Court dissolved it. This Court found a "likelihood that the content of [the Texas plaintiff's] suit on the '821 patent would substantially overlap that of a suit on the '405 patent." *Id.* at 408. "Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the court in Texas to resolve the question of whether both should be allowed to proceed." *Id.* Rather, the question had to be decided by the New York court; this Court accordingly ordered the district court "either to transfer the action . . . to the Southern District of New York or to dismiss the suit." *Id.*

This Court has repeatedly "recognized and applied the[] comity principles" reflected in *Mann*. *West Gulf*, 751 F.2d at 730. In *West Gulf*, this Court vacated an injunction issued against the defendant union, finding that "the district court should have dismissed or stayed the action or should have transferred it to the . . . Southern District of New York where a pending action involved closely related issues." *Id.* at 722. The Court explained that "the principle of comity requires

federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." *Id.* at 728.  The first-to-file rule exists "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* at 729.  Although the Texas federal district court had issued a preliminary injunction "on the apparent theory that [it] would not affect the New York action and, indeed, would preserve the status quo," this Court held that "[o]ur holding and discussion in *Mann* **make plain** that in this case the district court should have stayed, dismissed, or transferred" the plaintiff's action.  *Id.* at 730 (emphasis added).  "Inevitably, the district court's injunction intruded on [the] authority" of the district judge in New York.  *Id.* at 731.  "A different analysis leads to disharmony among the federal courts." *Id.*

This Court reversed a district court for failure to apply the first-to-file rule on two other occasions, finding an abuse of discretion in each instance.  In *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947 (5th Cir. 1997), while a first case (related to security interests in certain assets) was pending in a first federal court, the defendant in the first case filed a case that was assigned to a second federal court; the first federal court denied relief, but the second court (after denying a motion to transfer) granted it.  *See id.* at 949.  On review, this Court held that the court in the second-filed case "abused [its] discretion in denying the

motion to transfer." *Id.* at 950.  And in *Sutter Corp. v. P&P Industries, Inc.*, 125 F.3d 914 (5th Cir. 1997), after the defendant had moved in Oklahoma to vacate an arbitral award, the plaintiff moved to enforce it in Texas, *see id.* at 916; this Court – rejecting the argument that the Federal Arbitration Act's venue provision dictated filing in Texas, *see id.* at 918-20 – found that the first-to-file rule mandated transfer.  Given that "[t]here is no doubt that substantial overlap exists between the Texas and Oklahoma actions . . . the Texas district court abused its discretion" by entertaining the case.  *Id.* at 920.

This Court reaffirmed this rule in *Cadle*.  The plaintiff filed claims in the bankruptcy court, that court dismissed the complaint for lack of standing, and the plaintiff amended.  *See Cadle*, 174 F.3d at 601-02.  The plaintiff then filed a complaint in a different federal district, alleging RICO claims; the defendant argued that the case should be dismissed under the first-to-file rule in light of the pending bankruptcy proceedings.  *Id.* at 602.  The district court, finding that "the issues pending before the bankruptcy court substantially overlapped those raised by the suit before it," dismissed the case.  *Id.*  With regard to the plaintiff's argument that the bankruptcy court lacked jurisdiction over its RICO claims (which had never been filed there), the district court held that it was improper for it to pass on "any substantive issues in the case":

> There are proper appellate procedures a dissatisfied litigant can
> employ.  This Court does not sit as a super appellate court to review

orders of bankruptcy courts in other districts, and will not be
employed in a collateral attack on a decision of a sister court. This is
one of the very abuses the first-to-file rule is designed to prevent, and
is an illustration of why the principle of comity is so vital to our
judicial system.

*Id.*

This Court ruled that the district court should have transferred the case,
rather than dismissing it, but otherwise, it resoundingly endorsed the district
court's application of the first-to-file rule. *See id.* at 605-06. The Court rejected
the plaintiff's argument that the district court should have ruled on its substantive
objection to the bankruptcy court's jurisdiction before deferring to the first-filed
court, finding that argument "supported by neither the policies behind the rule nor
the cases that apply it." *Id.* at 605. "[T]he district court in this case was the
second-filed court, and under Fifth Circuit precedent," the determination whether
the case belonged in bankruptcy court was for that court to make. *Id.* "The district
court correctly refused to act as a 'super appellate court' by entertaining either
[plaintiff's] jurisdiction or the defendants' [merits] arguments, and properly
limited its inquiry to the potential overlap between the two cases. By so limiting
its analysis, the district court indeed avoided trenching on the authority of its sister
court." *Id.* at 606.

## B.    The First-To-File Rule Unquestionably Applies Here

In light of these precedents, there is no doubt that the first-to-file rule applies here. The issues in this case overlap almost completely with the issues before the California court, which ruled on the legal sufficiency of Dexon's claims that Cisco violated the antitrust laws. Although Dexon attempted to avoid the first-to-file rule on the ground that its Texas complaint was distinguishable from the counterclaims it had filed in California, *see* App.574-576, the district court correctly declined to accept that argument. Dexon's claims against Cisco in Texas overlap substantially with counterclaims it earlier filed in California. And while the Texas complaint adds a named party and two conspiracy counts, the allegations supporting Dexon's conspiracy claims were asserted in the California court and purportedly supported its earlier claims against Cisco. *See Save Power*, 121 F.3d at 951 ("Complete identity of parties is not required.").

All of the comity and judicial administration concerns that underlie the first-to-file rule are likewise implicated here. As to "duplicative litigation," *West Gulf*, 751 F.2d at 728, Cisco already responded to Dexon's antitrust claims in federal court in California, and the California court already dismissed them. That prior litigation also required the California court to address two subsequent sets of non-antitrust counterclaims and Dexon's motion for leave to file *fourth* amended

counterclaims.  Yet Dexon has now dragged Cisco before a second federal court, which has adjudicated the same antitrust-related allegations.

As to "rulings which may trench upon the authority of sister courts," *id.* at 729, permitting Dexon to maintain its Texas suit allows Dexon to thumb its nose at the California court procedurally and substantively.  *See supra* p. 9 (California court criticizing Dexon's conduct).  Dexon repeatedly amended its counterclaims in California; in dismissing the second amended counterclaims, the court held that Dexon would be permitted to amend "one last time."  *Cisco*, 2022 WL 797015, at *8.  Dexon took advantage and filed third amended counterclaims (and sought leave to file fourth amended counterclaims); weeks later Dexon initiated this suit, evading the California court's limitation.

At least as significant, rather than amend its antitrust counterclaims to address the legal deficiencies that the California court had identified, Dexon refiled its claims – with many allegations repeated verbatim – in Texas, prevailing on the district court to rule that those allegations stated a claim.  Dexon thus invited the district court to do what this Court has said courts in second-filed cases must not do:  "act as a super appellate court."  *Cadle*, 174 F.3d at 599 (cleaned up).

As this Court has noted, allowing the second-filed court to consider issues already pending before the first-filed court creates a situation where any decision "would either conflict with a ruling already made, rehash an issue already decided,

23

or trench on a sister court's treatment of the issue before it has been reached there." *Id.* at 604.  That occurred here.  Although the California court held that Dexon failed to state a tying claim because it failed to allege foreclosure of competitors' sales and its tying theory makes no logical sense, *see Cisco*, 2021 WL 5848080, at *4-5, the Texas court held that Dexon adequately pleaded foreclosure of competitors' sales and its tying theory makes logical sense.  Although the California court held that Dexon had failed to allege exclusionary conduct supporting a claim under Section 2 and its monopolization theory makes "little economic sense," *see id.* at *5, the Texas court found indistinguishable alleged conduct to be sufficient and economically sensible.  And while the California court held that Dexon had failed to allege antitrust injury, *see id.* at *6, the Texas court disagreed.  "Not only do the issues 'substantially overlap,' but inconsistent rulings have already resulted."  *Save Power*, 121 F.3d at 951.

To be sure, the district court insisted that its ruling reflected differences in the Texas complaint, rather than any substantive disagreement with the California court.  But, in fact, these different decisions cannot be attributed to factual differences in the complaints, because nothing of substance changed.  *See* App.833-834  (Cisco objection to R&R).[8]

---

[8] The California court's reasoning cannot be distinguished on the ground that, here, Dexon pleaded "a *Kodak* 'lock-in' theory" of tying.  App.932.  Dexon pleaded and briefed this theory in California, and the California court rejected it,

24

More fundamentally, even if Dexon had alleged meaningfully different facts in Texas, that would not provide a basis for a second federal court to "revisit" decisions that a first federal court made in a pending case, which is what the district court admittedly did. App.932. Under the first-to-file rule, the first-filed court has the power to determine whether a later-filed complaint raising substantially similar issues should proceed. *See Cadle*, 174 F.3d at 606 ("Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second-filed court] to resolve the question of whether both should be allowed to proceed.") (brackets in original) (quoting *Mann*, 439 F.2d at 408). Accordingly, the only federal district court with the authority to determine whether Dexon's antitrust claims overcame the deficiencies of its first amended counterclaims is the Northern District of California, and the district court's denial of transfer usurped the California court's power over the case. *See*

---

citing *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451 (1992). *See* App.138-139 (¶ 40) (pleading); App.430, 439 (briefing); *Cisco*, 2021 WL 5848080, at *4-5 (rejection). Nor can the California court's ruling be distinguished on the ground that here, "Dexon alleges . . . the <u>new equipment </u>is the tied product." App.933. Dexon made the same allegation in California. *See* App.145 (¶ 62). Finally, the California court's rulings cannot be distinguished on the ground that here, Dexon alleges that because its customers have limited IT budgets, buying Cisco products prevents them from "consider[ing]" competing products. App.928. Dexon's California counterclaims also alleged the supposed connection between limited IT budgets and harm to Cisco's competitors. *See* App.137, 140, 145-146 (¶¶ 34, 43, 63).

*De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945) (noting that an "allowable use" of the mandamus procedure is to address a district court's "usurpation of power").

### C.    The District Court's Failure To Transfer Was Based On Clear Legal Error And Was An Abuse Of Discretion

The district court's refusal to transfer was based on its view that the first-to-file rule did not apply because Dexon's antitrust counterclaims were no longer pending in California – even though the reason they were no longer pending is that they had been dismissed on the merits.[9] But the district court did not cite any authority from this Court – or any other court – drawing that distinction.[10] On the contrary, in *Cadle* itself, the plaintiff had never filed a RICO claim in the bankruptcy court; moreover, when this Court affirmed the district court's

---

[9] Thus, the district court did not suggest that any unusual circumstances overrode the strong presumption in favor of the first-filed court. *Cf. In re Nitro Fluids, L.L.C.*, 978 F.3d 1308, 1311 (Fed. Cir. 2020) (applying Fifth Circuit law and granting mandamus where district court denied transfer without finding "compelling circumstances").

[10] As noted, although the district court observed that, as a factual matter, *SIMO* involved a comparable situation, there is no dispute that the *SIMO* decision was based on the *SIMO* court's mistaken understanding that (unlike here) the ***case*** presenting the overlapping issue *was no longer pending*. 2020 WL 6889173, at *4 (heading: "The first-to-file rule does not apply because the California action is no longer pending."). In denying reconsideration, the district court attributed the misunderstanding to the movant's failure to present the argument earlier. By contrast, Cisco's transfer motion made clear that the California lawsuit remains pending. *See* App.58.

application of the first-to-file rule, all of the plaintiff's claims in the bankruptcy court had been denied. *See* 174 F.3d at 602. There was accordingly no risk that any ruling from the district court would have conflicted with a future ruling of the bankruptcy court. Yet this Court made clear that the existence of substantial overlapping issues – past, present, or future – mandated application of the first-to-file rule: comity requires transfer when a "ruling of the second-filed court would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached." *Id.* at 604. That is what happened here.

Furthermore, declining to apply the first-to-file rule here would directly undermine the interests that the first-to-file rule is designed to protect. As explained above, by filing in the Texas court the same claims that the California court had already dismissed, Dexon evaded the authority of the California court and thereby sought – so far successfully – inconsistent legal rulings from the Texas court. The district court's assurance that the rulings of the two courts do not conflict because of differences between the allegations is mistaken and, in any event, immaterial. Indeed, the district court itself acknowledged that it had "revisit[ed]" certain rulings of the California court to reach a different result. App.932. Under the first-to-file rule, the district court never should have reached those substantially overlapping issues.

27

Finally, the district court erred even assuming that "the proper comparison for application of the forward-looking first-to-file rule is between Cisco's presently pending IP claims in California and Dexon's antitrust claims." App.890.  Cisco repeatedly argued that because Dexon's misconduct in selling counterfeit Cisco products is at issue in both cases – as the basis for Cisco's affirmative claims in California and as a potential defense to Dexon's antitrust claims in Texas – both courts may continue to be called on to address the same legal and factual issues throughout the litigation.  *See* App.58, 735.  Neither the Magistrate Judge nor the district court acknowledged this argument, and the district court's statement that Cisco "fail[ed] to address . . . the proper analysis" is therefore inaccurate. App.890.

## II.    Petitioners Have No Other Adequate Means For Relief From The Court's Failure To Transfer

This Court has repeatedly held that a petitioner "ha[s] no other adequate means to attain relief" for the denial of a transfer motion besides mandamus. *Volkswagen*, 545 F.3d at 318; *see also Def. Distributed*, 30 F.4th at 423 ("[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases[.]"); *Rolls Royce*, 775 F.3d at 676; *Radmax*, 720 F.3d at 287 n.2.

Although each of the above cases involved a transfer decision under 28 U.S.C. § 1404, rather than under the first-to-file rule, their reasoning applies by its terms here.  In *Volkswagen*, this Court held that direct appeal is an inadequate

remedy for an erroneous failure to transfer venue under 28 U.S.C. § 1404(a)

because "the petitioner would not be able to show that it would have won the case

had it been tried in a convenient venue," interlocutory review under 28 U.S.C.

§ 1292(b) is unavailable, and "the harm – inconvenience to witnesses, parties and

other – will already have been done by the time the case is tried and appealed."

545 F.3d at 319 (cleaned up).  All of these considerations apply equally to a failure

to transfer under the first-to-file rule.  *See In re Nitro Fluids, L.L.C.*, 978 F.3d

1308, 1311 (Fed. Cir. 2020) (applying Fifth Circuit law and granting mandamus

petition under the first-to-file rule).  In particular, under *Volkswagen*, Cisco and

CDW may have difficulty demonstrating prejudice from a failure to transfer.  *See*

545 F.3d at 318-19.  And the "values" motivating the first-to-file rule – like

"maximiz[ing] judicial economy and minimiz[ing] embarrassing inconsistencies" –

can be protected only "prophylactically."  *Cadle*, 174 F.3d at 604; *see also*

*Volkswagen*, 545 F.3d at 319.  Mandamus is therefore proper.

## III.  The Writ Is Appropriate To Deter Abusive Litigation Conduct

Mandamus is also warranted because the issue presented here has "an

importance beyond th[is] immediate case."  *Volkswagen*, 545 F.3d at 319; *see also*

*La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-60 (1957) (mandamus

appropriate for issues important to "proper judicial administration").  As this Court

has made clear, the first-to-file rule reflects the principle that district courts should

take care to avoid undermining the authority of co-equal district courts.  *See*, *e.g.*, *West Gulf*, 751 F.2d at 728-29.  Failing to apply the first-to-file rule where (as here) a particular claim is no longer pending *because the first-filed court dismissed it* guts that principle.

When a litigant files a claim in a first court, loses on the merits, and then tries for a different result in a second court, the inefficiency is plain:  the first court has already familiarized itself with the facts and law and has already identified the deficiencies that an amended complaint must address.  But entertaining such a case in the second court imposes an institutional cost that goes beyond inefficiency:  it undermines the authority of the first-filed court to decide whether an allowed amendment has addressed the legal deficiencies that the court had identified and then to determine whether any further amendments should be allowed.  At the very least, the court below decided whether Dexon's complaint adequately addressed the legal defects of the amended complaint that the California court had dismissed rather than leaving that matter to the California court, as this Court's precedents direct.  Proper application of the first-to-file rule under this Court's precedents avoids that tension between co-equal federal tribunals.

More fundamental still, a district court may not undertake review of the rulings of another district court in a pending case.  *See Cadle*, 174 F.3d at 606.  Yet the potential for conflicting judgments is highest when a party whose claims have

been dismissed on the merits refiles elsewhere: that party necessarily seeks an inconsistent ruling. Permitting such parties to refile elsewhere *because* their claims have been dismissed (as the decision below does) thus renders the first-to-file rule inapplicable in the cases in which conflict is likeliest to occur.

Finally, if the district court's failure to transfer the case is not corrected, other litigants will have an incentive to shop for a more favorable forum after their claims are dismissed without prejudice – and few complaints are dismissed without providing a plaintiff an opportunity to amend. Such litigation tactics are abusive, imposing burdens on the courts and other parties, which is why other courts that have confronted similar "misuse[s] of the ability to refile" have condemned them. *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372, 1379 (Fed. Cir. 2022) (describing comparable tactics). Dexon's abusive litigation strategy – sanctioned by the decision below – provides an open invitation for other litigants to take advantage of the second chance that the decision below offers. This affront to the judicial system amply justifies an exercise of this Court's supervisory powers. *See Radmax*, 720 F.3d at 287 & n.1; *Volkswagen*, 545 F.3d at 318; *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (per curiam); *see also La Buy*, 352 U.S. at 259-60 (granting writ to correct persistent disregard of procedural rules); *McCullough v. Cosgrave*, 309 U.S. 634 (1940) (per curiam) (same).

## CONCLUSION

The Court should grant the writ, vacate the order denying transfer, and direct the district court to transfer this case to the United States District Court for the Northern District of California.

Dated: April 24, 2023

Respectfully submitted,

/s/ *James A. Reeder, Jr.*
James A. Reeder, Jr.
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
(832) 239-3838
jareeder@jonesday.com

Thomas D. York
J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood Street
Dallas, TX 75201
(214) 969-4523
tdyork@jonesday.com
jbaguinaga@jonesday.com

*Attorneys for CDW Corporation*

/s/ *Aaron M. Panner*
Aaron M. Panner
Andrew E. Goldsmith
Ryan M. Folio
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
agoldsmith@kellogghansen.com
rfolio@kellogghansen.com

Deron R. Dacus
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1177
ddacus@dacusfirm.com

*Attorneys for Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 24, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Aaron M. Panner*
Aaron M. Panner

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limits of Federal Rule of Appellate Procedure 21(d) because, according to the word-processing system used to prepare it (Microsoft Word 2016), it contains 7,475 words, excluding the portions of the petition exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this petition complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word 2016 in a proportionally spaced typeface (Times New Roman, 14 point).

_/s/ Aaron M. Panner_
Aaron M. Panner

April 24, 2023