## NO. 23-40257

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————

### In re CISCO SYSTEMS, INC. and CDW CORPORATION

#### Petitioners

———————————

## RESPONDENT DEXON CORPORATION INC'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

———————————

William E. Davis, III
Christian J. Hurt
**The Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Phone: (903) 230-9090
bdavis@davisfirm.com
churt@davisfirm.com

David H. Reichenberg
Matthew F. Bruno
Tina P. Lapsia
**Manatt, Phelps, & Phillips LLP**
7 Times Square
New York, NY 10036
dreichenberg@manatt.com
mbruno@manatt.com
tlapsia@manatt.com
Phone:  (212) 790-4626

**ATTORNEYS OR RESPONDENT
DEXON COMPUTER, INC.**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. In addition to the disclosure made by Cisco Systems, Inc. and CDW Corporation, Dexon Computer, Inc. discloses the following.

1.     Respondent Dexon Computer, Inc. is a Minnesota corporation with its principal place of business at 9201 E. Bloomington Freeway, Suite BB, Bloomington, Minnesota 55420. Dexon Computer, Inc. does not have a parent corporation, and no publicly held corporation holds more than 10% of its stock.

2.     Dexon Computer, Inc. is represented by its attorneys David Reichenberg, Matthew F. Bruno and Tina Lapsia of Manatt, Phelps & Phillips, L.L.P., 7 Times Square, New York, NY 01136 and William Ellsworth Davis, III, Rudolph Fink, IV, and Christian John Hurt of Davis Firm, P.C., Suite 230, 213 N. Fredonia Street, Longview, TX 75601.


Dated:  May 26, 2023                          Respectfully submitted,

                                              By:   */s/Christian Hurt*
                                                    Christian Hurt

## STATEMENT REGARDING ORAL ARGUMENT

Respondent Dexon Computer, Inc. does not believe that oral argument is appropriate in this case and that the Court can address the issues raised by the Petition based on the parties' written submissions.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................ 1

STATEMENT OF THE ISSUE .............................................................. 2

STATEMENT OF THE FACTS ............................................................. 2

    I.    The California Litigation .......................................................... 2

    II.   The Texas Litigation .............................................................. 3

REASONS FOR DENYING THE PETITION ......................................... 5

    I.    The Petition Fails To Show That The Right To Transfer
        Is Clear And Indisputable ....................................................... 6

        A.    Mandamus Requires A Clear Abuse Of Discretion That
            Amounts To A Usurpation of Judicial Power ......................... 6

        B.    The District Court Did Not Clearly Abuse Its
            Discretion In Finding No Substantial Overlap ...................... 7

            1.    There Are No Co-Pending Antitrust Claims
                 In California ............................................................... 8

            2.    Dexon's Texas Antitrust Claims Do Not
                 Substantially Overlap With Cisco's California
                 Intellectual Property Claims ......................................... 12

                 a)    Petitioners Failed To Preserve This Issue ........... 13

                 b)    Petitioners' Arguments Fail
                      On The Merits ..................................................... 14

            3.    Including The Dismissed Antitrust Counterclaims
                 Would Not Show A Substantial Overlap Between
                 The Cases .................................................................. 18

        C.    Petitioners' Policy Arguments Do Not Warrant
            Mandamus ............................................................................ 22

        D.    At Most, Petitioners Are Entitled To A Remand—
            Not Transfer ......................................................................... 23

II.   Petitioners Fail To Show A Lack Of Adequate Means
      Of Obtaining Relief ............................................................... 24

III.  Mandamus Is Not Otherwise Appropriate Under
      These Circumstances ............................................................. 27

      A.   Dexon Did Not Engage In Abusive Litigation Tactics ............. 27

      B.   Petitioners Seek Mandamus For An Improper Purpose ........... 29

      C.   The Transfer Order Does Not Raise Any Issues
           With An Importance Beyond This Case ................................. 30

CONCLUSION ..................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Akins v. Worley Catastrophe Response, LLC*,
  921 F. Supp. 2d 593 (E.D. La. 2013) ....................................................9

*Brandt v. U.S.*,
  710 F.3d 1369 (Fed. Cir. 2013) ...........................................................8

*Browning v. Kramer*,
  931 F.2d 340 (5th Cir. 1991) ..............................................................23

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ..................................................... *passim*

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004) ..................................................................... 24, 27

*Cisco Sys. Inc. v. Dexon Computer, Inc.*,
  2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) .........................................2

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
  No. 3:20-CV-4926-CRB (N.D. Cal. Dec. 8, 2022) .............................18

*Cisco Sys., Inc. v. Dexon Computer, Inc.*,
  541 F. Supp. 3d 1009 (N.D. Cal. 2021) ....................................... 15, 18

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
  236 F.3d 1148 (9th Cir. 2001) ............................................................17

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ............................................................................9

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*,
  748 F.3d 249 (5th Cir. 2014) ..............................................................13

*Dexon Computer v. Cisco Sys., Inc.*,
  No. 5:22-CV-52 (E.D. Tex. Mar. 23, 2023) ................................... 29-30

*Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ..............................................................25

*Dowda v. Cascade Process Controls, Inc.*,
    No. SA-20-CV-01201-JKP, 2021 WL 148059 (W.D. Tex. Jan. 15, 2021) ............9

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)...........................................................................................21

*Hentz v. Cabana*,
    35 F.3d 559 (5th Cir. 1994)...............................................................................28

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017).......................................................................... 5-6

*In re First S. Sav. Ass'n*,
    820 F.2d 700 (5th Cir. 1987)...............................................................................6

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019)...............................................................................6

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019)........................................................................5, 10

*In re Lloyd's Reg. N. Am., Inc.*,
    780 F.3d 283 (5th Cir. 2015).........................................................................6, 10

*In re Nitro Fluids L.L.C.*,
    978 F.3d 1308 (Fed. Cir. 2020) .................................................................. 25, 26

*In re Paxton*,
    60 F.4th 252 (5th Cir. 2023)..........................................................................6, 24

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008)..............................................................................30

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
    665 F.3d 671 (5th Cir. 2011) .................................................................... *passim*

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971)...................................................................... 24, 25

*Montano v. Texas*,
    867 F.3d 540 (5th Cir. 2017)..............................................................................23

*Olaoye v. Wells Fargo Bank NA*,
    No. 3:12-CV-4873-M-BH, 2013 WL 5422888 (N.D. Tex. Sept. 27, 2013)...........9

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997)................................................... 15, 24, 25

*Sawgrass Techs., Inc. v. Texas Original Graphics, Inc.*,
  No. 06-1190, 2007 WL 634434 (Fed. Cir. Mar. 2, 2007)....................................27

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497 (2001)................................................................28

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
  No. 2:20-CV-00003-JRG, 2020 WL 6889173 (E.D. Tex. Nov. 24, 2020) ............9

*Sutter Corp. v. P & P Indus., Inc.*,
  125 F.3d 914 (5th Cir. 1997)......................................................25

*Tank Insulation Int'l, Inc. v. Insultherm, Inc.*,
  104 F.3d 83 (5th Cir. 1997).......................................................17

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist.
  of ILA, AFL-CIO*,
  751 F.2d 721 (5th Cir. 1985)......................................................25

*Will v. United States*,
  389 U.S. 90 (1967)................................................................27

## Statutes and Other Authorities:

15 U.S.C. § 26........................................................................17

28 U.S.C. § 1291......................................................................6

28 U.S.C. § 1292...................................................................6, 30

28 U.S.C. § 1292(b)..................................................................27

28 U.S.C. § 1331.....................................................................17

28 U.S.C. § 1332.................................................................. 16, 17

28 U.S.C. § 1337.....................................................................17

28 U.S.C. § 1367.................................................................. 16, 17

28 U.S.C. § 1367(a)..................................................................17

28 U.S.C. § 1404(a).............................................................. 25, 26

28 U.S.C. § 1500 ................................................................................8

28 U.S.C. § 2201 ..............................................................................17

Black's Law Dictionary 1248 (9th ed. 2009) .................................8

Fed. R. Civ. P. 12(b)(6) .....................................................................3

Fed. R. Civ. P. 13 ..............................................................................28

Fed. R. Civ. P. 13(a) .........................................................................27

Fed. R. Civ. P. 13(a)(1) ....................................................................17

Fed. R. Civ. P. 13(b) ................................................................. 27, 28

Fed. R. Civ. P. 54(b) .........................................................................27

6 Fed. Prac. & Proc. Civ § 1403 (3d ed.) .................................. 27-28

6 Fed. Prac. & Proc. Civ § 1420 (3d ed.) ........................................28

9 Fed. Prac. & Proc. Civ § 2373 (4th ed.) .......................................28

## INTRODUCTION

Cisco and CDW ("Petitioners") fail to show that mandamus is appropriate. Because the writ steps outside the Court's ordinary statutory jurisdiction, courts reserve mandamus for truly extraordinary cases—requiring a clear abuse of discretion, a showing of no other adequate means to obtain the relief, and that the writ is otherwise appropriate. These are high bars, and Petitioners do not meet them.

This case involves transfer under the first-to-file rule, a judicially-created doctrine that vests district courts with substantial discretion. The rule is forward-looking and focuses on whether issues raised in a second lawsuit will substantially overlap with the issues pending in a first lawsuit.

The District Court was within its discretion to deny transfer under the first-to-file rule: the claims here are not and have never been pending in another court, and different antitrust claims that Petitioners argue invoke the rule were dismissed without prejudice by a California court almost 18 months ago. With no antitrust claims pending in another court, there is no judicial economy, comity, or consistency that transfer of this case would serve. But even if Petitioners were correct that the District Court should have considered the dismissed claims, mandamus is still inappropriate—as the District Court recounted in detail when it denied Petitioners' motions to dismiss (and Petitioners ignore), the antitrust claims here are substantially different than the claims the California court dismissed without prejudice.

## STATEMENT OF THE ISSUE

The issue presented is whether mandamus relief is appropriate where (1) the District Court followed the first-to-file law of this Circuit, including as lower courts have applied it; (2) the basis for mandamus was not squarely raised below; and (3) transfer under the first-to-file rule would not serve judicial economy, prevent inconsistent judgements, or promote comity between district courts.

## STATEMENT OF THE FACTS

### I.    The California Litigation

In 2020, Cisco sued Dexon in the Northern District of California and alleged that Dexon sold counterfeit Cisco networking products in violation of the Lanham Act and California state law.  App.873.  Dexon responded and asserted "various antitrust counterclaims among other trademark and tort counterclaims."  App.874. Cisco moved to dismiss the counterclaims, and the Court granted Cisco's motion and provided Dexon with leave to amend.  App.874 (citing *Cisco Sys. Inc. v. Dexon Computer, Inc.*, 2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) (*Cisco I*)).

Dexon amended the complaint, but did not assert the antitrust counterclaims in its subsequent amendments.  App.874.  Over the next six months, Cisco continued to move to dismiss each counterclaim, and the Court ultimately dismissed Dexon's non-antitrust claims in June 2022 without leave to amend.  App.874–75.

## II.     The Texas Litigation

In April, 2022, Dexon filed different antitrust claims in the Eastern District of Texas against Cisco and CDW—an information-technology-sales business—who was never a party in California.  The Texas case raises different claims and allegations that were never in California, including a conspiracy between CDW and Cisco, attempted monopolization of a different relevant market (Internet Protocol, or "IP" phones), and Texas state-law claims.  *See, e.g.*, App.14 (¶ 44), App.23–25 (¶¶ 69–77); App.29–31 (¶¶ 87–100); App.35 (¶ 117); App.36–37 (¶ 122–128).

Petitioners moved to dismiss the Texas complaint under Rule 12(b)(6) and moved to transfer under the first-to-file rule.  The District Court denied both motions. The Magistrate Judge first ruled on the motions, holding a hearing on both motions and then issuing a 14-page opinion on the motion to transfer (App.719–32) and an 82-page opinion on the motion to dismiss (App.748–829).

On transfer, the Court found that the proper analysis, based on this Court's *Cadle* decision[1] and cases applying *Cadle*, was to compare the pending claims in California (which were the Lanham-Act-based claims) to the Texas antitrust claims. App.726–32.  Even though Petitioners did not conduct that analysis in their own Motion, the Court compared the issues raised by pending claims in the two cases and

---

[1] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999).

held there was not substantial overlap (App.731–32) (citations omitted):

> In the California Lawsuit, Cisco alleges claims of trademark infringement, trademark counterfeiting, false designation of origin, and associated state law claims, asserting that Dexon allegedly "engaged in schemes to traffic counterfeit Cisco products." In the current Texas Lawsuit, Dexon alleges five claims under the Sherman Antitrust Act and one claim under the Texas Free Enterprise and Antitrust Act, including allegations of a conspiracy between Cisco and CDW to monopolize and to suppress inter-brand and intra-brand competition from entities like Dexon.
>
> The "core issues" in the two forums are not the same, and the "proof adduced" will not be identical. Moreover, Cisco has not shown how any ruling by this Court will affect the California Lawsuit, which concerns different issues, much less the risk of piecemeal litigation or inconsistent outcomes.

On dismissal, the Magistrate Judge recommended denying the motion based on the differences in the claims, allegations, and theories between the Texas and California cases. *E.g.*, App.772; App.775; App.786; App.799–816. The Texas Court accepted the California Court's findings as they applied to the antitrust claims in California (and under Ninth Circuit law) and stated it would not "serve as a 'super appellate' court to the California Court." App.764 (quoting App.732 n.8).

Petitioners objected to the Magistrate Judge's findings, and the District Judge overruled the objections. The District Judge held another hearing on the motions and issued a 66-page order addressing the objections in detail. App.872–937.

On transfer, like the Magistrate Judge, the District Judge concluded that

authority from this Circuit supported the conclusion that "the proper comparison for application of the forward-looking first-to-file rule is between Cisco's presently pending IP claims in California and Dexon's antitrust claims in this Court." App.890; App.885–90 (discussing cases). Under that analysis, the District Judge agreed with the Magistrate Judge that "Dexon's antitrust claims pending in this Court do not substantially overlap with the claims currently pending in California." App.892. The Court noted that Petitioners "fail[ed] to address the Magistrate Judge's determination that the proper analysis to determine substantial similarity is to compare (i) Cisco's currently pending IP claims against Dexon in California and (ii) Dexon's present antitrust claims in this Court." App.890.

The District Judge also upheld the Magistrate Judge's analysis on the sufficiency of Dexon's antitrust pleading based on the differences between the Texas and California antitrust claims, factual allegations, and theories. The Court found there was no conflict between the Magistrate Judge's findings and the "substantive rulings of the California Court in *Cisco I*." App.933.

Petitioners now seek a writ of mandamus in this Court.

## REASONS FOR DENYING THE PETITION

"A writ of mandamus is 'a drastic and extraordinary remedy reserved for really extraordinary cases[.]'" *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (quoting *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir.

2017)).  Before this Court can grant mandamus, "three conditions must be met: (1) the petitioner must show his right to the writ is clear and indisputable; (2) the petitioner must have no other adequate means of obtaining relief; and (3) the issuing court must be satisfied in its own discretion that the writ is appropriate under the circumstances."  *In re Paxton*, 60 F.4th 252, 255 (5th Cir. 2023).  These "stringent standards" are not met here.  *Id.*

## I.    The Petition Fails To Show That The Right To Transfer Is Clear And Indisputable

### A.    Mandamus Requires A Clear Abuse Of Discretion That Amounts To A Usurpation of Judicial Power

Mandamus is an extraordinary remedy because it bypasses the regular appeals process under 28 U.S.C. §§ 1291 and 1292.  "In recognition of the extraordinary nature" of mandamus, this Court "require[s] more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion.  And even reversible error by itself is not enough to obtain mandamus." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015).  Instead, on matters of discretion (like the first-to-file rule), "'a clear and indisputable right to the issuance of the writ of mandamus will arise only if the district court has clearly abused its discretion, such that it amounts to a judicial usurpation of power.'"  *In re Gee*, 941 F.3d 153, 158–59 (5th Cir. 2019) (quoting *In re First S. Sav. Ass'n*, 820 F.2d 700, 707 (5th Cir. 1987)); *Cadle*, 174 F.3d at 603 (5th Cir. 1999) ("The first-to-

file rule is a discretionary doctrine[.]"). Petitioners have not met this high burden.

## B.   The District Court Did Not Clearly Abuse Its Discretion In Finding No Substantial Overlap

The District Court did not clearly abuse its discretion. Two judges reviewed Petitioners' motions, held hearings, and issued over 100-pages of detailed written orders explaining why, under the authority from this Circuit, the issues in the Texas and California cases do not substantially overlap. Petitioners do not cite any authority from this Court that the District Court clearly failed to apply. Courts have significant discretion in assessing transfer, and Petitioners fail to show a clear abuse of discretion for at least three reasons.

First, Dexon's California antitrust counterclaims—the sole basis on which Petitioners invoked the first-to-file rule, App. 46, 53–55—were not pending when Dexon filed the Texas case. Because the first-to-file rule is a forward-looking doctrine focusing on issues that "might substantially duplicate those raised by a case *pending* in another court," *Cadle*, 174 F.3d at 603 (emphasis in original), it was reasonable for the District Court to focus on issues raised by the California claims pending when Dexon brought the Texas case. Indeed, this is how other district courts in this Circuit have applied *Cadle*.

Second, the District Court was within its discretion to find that the issues pending in California—which relate to Lanham-Act-based claims—do not substantially overlap with Dexon's Texas antitrust claims. Petitioners did not

contend below that such claims substantially overlapped, but the Magistrate Judge still went through a thorough analysis comparing the issues in the California and Texas cases. App.731–32. Petitioners did not challenge that holding before the District Judge, App.890, and cannot do so here.

Third, even if the District Court should have also compared the dismissed claims to the Texas claims, Petitioners still have not shown a clear abuse of discretion. As the Court recounted when denying Petitioners' motions to dismiss, the two antitrust claims have different legal theories, factual allegations, and parties.

### 1.    There Are No Co-Pending Antitrust Claims In California

The first-to-file rule applies when "related cases are pending before two federal courts" and "the issues raised by the cases substantially overlap." *Cadle*, 174 F.3d at 603 (5th Cir. 1999) (emphasis added); *see also* App.726–731, 886–892 (applying *Cadle*-line of cases). The doctrine is "essentially a forward-looking doctrine" that courts use to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Cadle*, 174 F.3d at 603 (emphasis in original). A "pending" claim is one "'[r]emaining undecided; awaiting decision.'" *Brandt v. U.S.*, 710 F.3d 1369, 1379–80 (Fed. Cir. 2013) (quoting Black's Law Dictionary 1248 (9th ed. 2009)) and holding that a claim is no longer "pending" under 28 U.S.C. § 1500 "once a claim is dismissed or denied

. . . until a motion for reconsideration or notice of appeal is filed").

Consistent with this authority, courts in this Circuit have concluded that the first-to-file rule does not apply if the relevant claims in the first action are dismissed prior to when the plaintiff files the second action. *See, e.g.*, *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG, 2020 WL 6889173, at *4 (E.D. Tex. Nov. 24, 2020) (declining to transfer claims under first-to-file rule because it was undisputed that "the trade secret claims were disposed of by the California court" and the rule "only applies in instances where there are concurrent, pending proceedings in different federal courts, and moreover, the Court responding to the motion has discretion to apply the rule") (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) and *Cadle*).[2]

Under this authority, the District Court did not clearly abuse its discretion when it focused on the issues raised by the claims <u>pending</u> in California and not the

---

[2] *See also Olaoye v. Wells Fargo Bank NA*, No. 3:12-CV-4873-M-BH, 2013 WL 5422888, at *2 (N.D. Tex. Sept. 27, 2013) ("Here, it is undisputed that Plaintiff filed this case four months after his lawsuit in the Fort Worth Division was dismissed. Because the first suit was no longer pending at the time Plaintiff filed this action, the first-to-file rule does not provide a basis for transfer of this case."); *Dowda v. Cascade Process Controls, Inc.*, No. SA-20-CV-01201-JKP, 2021 WL 148059, at *2 (W.D. Tex. Jan. 15, 2021) ("The Guzman suit concluded and was dismissed on August 3, 2020. Because the two suits are not pending at the same time, the first-to-file rule does not apply."); *Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 599 (E.D. La. 2013) (holding that, under *Cadle*, because the court dismissed the first action prior to filing the second action "no other pending collective action suggests that the first-filed rule should be invoked").

dismissed claims. Petitioners do not cite any authority that requires analyzing dismissed claims. Pet. at 26–28. They do not cite to any court that has interpreted *Cadle* in that manner. And the fact that other courts in this Circuit have followed *Cadle* in a similar manner reinforces that this case "d[oes] not meet the test for a 'clear abuse[] of discretion that produce[s] patently erroneous results'"—regardless of its merits. *JPMorgan Chase*, 916 F.3d at 504 (quoting *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015)) (denying petition for writ of mandamus even though the district court erred in interpreting binding authority).

The District Court's interpretation of *Cadle* is also correct. *Cadle* rejected the argument, underlying the Petition, that the first-to-file rule is a backward-looking doctrine. In *Cadle*, the Court addressed whether the first-to-file rule should—like collateral estoppel—allow the second court to assess whether the first court had jurisdiction. 174 F.3d at 603–04. The Court held it did, and it reached this holding because the first-to-file rule is a *forward-looking* doctrine, unlike collateral estoppel, which is a *backward-looking* doctrine: the two doctrines address judicial economy and consistency in judgments at different times.

> Although both doctrines rest on notions of judicial economy and consistency in judgments, they address these issues at different times. Collateral estoppel is a backward-looking doctrine. Courts apply it to avoid relitigation of, and inconsistency with, issues already decided by other courts. . . .
>
> The first-to-file rule, by contrast, is essentially a forward-

> looking doctrine. Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court . . . . Because the doctrines approach the problem of inconsistent rulings and judicial economy from different perspectives, different procedures are required for proper operation of the rules.

*Cadle*, 174 F.3d at 603–04. Petitioners ignore this on-point holding, Pet. at 20–21, 26–26, just as they did below, App.889 (noting failure to address *Cadle*). They instead attempt to reargue *Cadle*, claiming it supports a backward-looking view based on the statement that the second-filed court's ruling "would either conflict with a ruling already made, rehash an issue already decided, or trench on a sister court's treatment of the issue before it has been reached there." *Cadle* 174 F.3d at 604. But that language relates to *Cadle*'s holding that the first-to-file rule is a forward-looking doctrine: what matters is the present state of the first-filed case. While a past overlap can be relevant, it only matters if it speaks to current overlap. A backward-looking analysis focusing on dismissed claims erases *Cadle*'s <u>only</u> distinction between collateral estoppel and the first-to-file rule (which would result in a different outcome of the case).

Petitioners also claim that *Cadle*'s facts supports their position: (1) the *Cadle* plaintiff filed RICO claims in the second-filed court but "never filed a RICO claim in the [first-filed] bankruptcy court"; and (2) "all of the plaintiff's claims in the bankruptcy court had been denied" by the time *Cadle* issued. Pet. at 26–27.

11

These arguments do not show a clear abuse of discretion. The first point is irrelevant because there were claims <u>pending</u> in both forums. The first-to-file rule "does not require the cases to be identical," and the crucial inquiry is one of substantial overlap. *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). It was not contested in the *Cadle* decision the claims <u>pending</u> in the bankruptcy court were substantially similar to claims later filed in district court. 174 F.3d at 602–03. Here, there are no claims <u>pending</u> in California that are substantially similar to the Texas claims—and the claims Petitioners asserted were substantially similar were <u>dismissed</u> over a year ago.

The second point is misleading. The bankruptcy proceedings in *Cadle* were still pending when the plaintiff filed the second action (as well as when the district court ruled on the first-to-file motion). 174 F.3d at 602. And even when *Cadle* issued, the bankruptcy proceedings were pending: after the bankruptcy court entered judgment, the plaintiff "appealed that judgment . . . to the Laredo district court." *Id.*

The District Court properly applied *Cadle* and authority from this Circuit interpreting *Cadle*. The Court was thus within its discretion to focus on the overlap between this case and the claims <u>pending</u> in California.

> **2.  Dexon's Texas Antitrust Claims Do Not Substantially Overlap With Cisco's California Intellectual Property Claims**

The District Court did not abuse its discretion when it found that Cisco's

pending Lanham-Act-based claims in California do not substantially overlap with Dexon's Texas antitrust claims.   First, Petitioners waived the issue.   Second, Petitioners do not show a clear abuse of discretion on the merits as the core issues in the cases are different and the proof adduced between the matters is not identical.

### a)     Petitioners Failed To Preserve This Issue

"The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 267 (5th Cir. 2014) (quotation omitted). Though argued here, Petitioners did not argue below that the Court should compare the current California claims with the Texas claims.  They thus waived the issue.

Petitioners argued below that the overlap between the <u>dismissed</u> California antitrust claims and the Texas antitrust claims required transfer.  App.51 ("This Court should transfer Dexon's complaint pursuant to the 'first to file' rule because Dexon already asserted the claims in its complaint in the Northern District of California."). The Magistrate Judge disagreed and focused on the <u>pending</u> claims.  App.731–32.

Petitioners objected to Magistrate Judge's overall conclusion, but, as the District Judge found, "nowhere in their objections" did Petitioners "argue their presently pending claims in California are substantially similar to Dexon's antitrust claims in this case." App.887–888; App.892 (finding Petitioners "d[id] not expressly object to the Magistrate Judge's finding of a lack of substantial similarity between

13

the claims pending in the instant case and the claims pending in California"); App.890 (finding that Petitioners "fail[ed] to address the Magistrate Judge's determination that the proper analysis to determine substantial similarity is to compare (i) Cisco's currently pending IP claims against Dexon in California and (ii) Dexon's present antitrust claims in this [Texas] Court").[3]

Now, Petitioners cite a few sentences on two pages where they claim they raised this issue. Pet. at 28 (citing App.58 and App.735). But those pages argued something different: that the policy of limiting duplicative litigation weighed in favor of transfer because the Lanham Act claims "could be highly relevant" to the Texas case due to unidentified affirmative defenses that Petitioner Cisco "may assert" in the Texas case. App.57–58; *see also* App.735 (referencing "a potential defense to Dexon's antitrust claims"). But that is not the substantial-overlap argument Petitioners raise now.

### b)    *Petitioners' Arguments Fail On The Merits*

Should the Court address this issue on mandamus, Petitioners fail to show a clear abuse of discretion. The California and Texas cases involve different types of claims, intellectual property versus antitrust. They involve different issues—*e.g.*,

---

[3] While Petitioners here claim that the District Court's statements are "inaccurate," Pet. at 28, they never moved for reconsideration.

14

that Dexon "allegedly 'engaged in schemes to traffic counterfeit Cisco products'" versus "allegations of a conspiracy between Cisco and CDW to monopolize and to suppress inter-brand and intra-brand competition from entities like Dexon." App.731 (quoting *Cisco Sys., Inc. v. Dexon Computer, Inc.*, 541 F. Supp. 3d 1009, 1013 (N.D. Cal. 2021)). And they focus on different proof, one focusing on Dexon's alleged counterfeiting activities and one focusing on Petitioners' antitrust violations.

Petitioners do not challenge most of the District Court's analysis. It is undisputed that the Court applied the right law: "the relevant inquiry is whether the two actions substantially overlap," looking to whether the "core issues" in the forum are the same or if the "proof adduced" will be identical. App.731–32 (citing *Sweet Little Mexico*, 665 F.3d at 678. And Petitioners do not contest that "'where the overlap between two suits is less than complete,'" like this case, "'the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'" App.731 (quoting *Sweet Little Mex.*, 665 F.3d at 678 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)).

Petitioners argue that the District Court erred because Dexon's alleged misconduct "in selling counterfeit Cisco products is at issue in both cases" due to Cisco's affirmative defenses in Texas. Pet. at 28. That statement is incorrect, and Petitioners do not point to <u>any</u> supporting evidence. None of Cisco's affirmative

defenses in this case reference alleged counterfeiting (and no variation of that word is used in its answer). Defendant Cisco Systems, Inc.'s Answer to Plaintiff's Amended Complaint and Affirmative Defenses (Dkts. 191 and 192), at 40–41, *Dexon Computer, Inc. v. Cisco Sys., Inc.*, No. 5:22-CV-53 (E.D. Tex. May 12, 2023). And Cisco did not bring intellectual property claims in the Texas case either. *See id.*

Petitioners also assert substantial overlap because Dexon "alleged [in California] that its antitrust claims 'arise out of the same controversy as [Cisco's] Federal Claims." Pet. at 3 (quoting App.131 ¶ 13). This is also incorrect.

First, Petitioners do not show that the statement applies to the California antitrust claims. Besides the dismissed antitrust claims, Dexon raised Lanham-Act-based claims, state-law tort claims (*e.g.*, unfair competition, tortious interference, and trade libel), and two Lanham-Act-related declaratory-judgment claims in California. App.152–66. In the jurisdiction section there, Dexon provided an umbrella-statement of jurisdictional bases for its counterclaims. App.131 ¶ 13.

> This Court has subject matter jurisdiction over Dexon's counterclaims pursuant to 28 U.S.C. §§ 1367 and 1332. Dexon's counterclaims arise out of the same controversy as plaintiffs' Federal claims, there is complete diversity of citizenship between Plaintiffs and Dexon, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

The <u>only</u> claims whose jurisdiction requires that they "arise out of the same controversy as plaintiffs' Federal claims" are the declaratory-judgment claims—not

16

the antitrust claims. *See* 28 U.S.C. § 2201 (requiring "a case of actual controversy" for declaratory-judgment actions). Jurisdiction for the antitrust claims arose under federal-question jurisdiction for the Sherman Act claims[4] and supplemental jurisdiction and diversity jurisdiction for the state-law antitrust claim.[5] Indeed, Petitioners provide no reason why the "same controversy" is required for jurisdiction over the antitrust claims.[6]

Second, Petitioners improperly conflate the dismissed California antitrust claims with the Texas claims. The two are not the same. The Texas claims, as detailed below, are different—in factual allegations, claims, and theories—and include another party, CDW. And many of the Texas allegations and claims arise out of anticompetitive conduct that Dexon discovered in Texas.

But even crediting all of their incorrect assertions, Petitioners still have not

---

[4] *See, e.g.*, *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85 (5th Cir. 1997) ("The district court originally had jurisdiction of the matter on appeal before us based upon the Sherman Antitrust Act and federal question jurisdiction.").

[5] *See, e.g.*, 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1367 (supplemental jurisdiction); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) ("The district court had jurisdiction over the federal antitrust claims under 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 26, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a)").

[6] It is also undisputed that the antitrust counterclaims were permissive and thus did not "arise[] out of the transaction or occurrence that is the subject matter" of Cisco's California claims. Fed. R. Civ. P. 13(a)(1).

shown a clear abuse of discretion.  None of the pending claims in the California and Texas raise the same affirmative issues.  And the differences between the parties in the cases are significant—the Texas case includes CDW and the California case now includes approximately 20 third-party defendants related to Cisco's counterfeit allegations.  *See* Defendant and Third-Party Plaintiff Dexon Computer, Inc.'s Amended Third-Party Claims (Dkt. 150), *Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 3:20-CV-4926-CRB (N.D. Cal. Dec. 8, 2022).

At most, Petitioners point to both cases being related to a larger dispute between the parties and the <u>potential</u> for <u>some</u> overlap in proof and related factual findings that <u>might</u> happen to be based on defenses Cisco has not expressly pled. This falls short of showing that the "core issues" or the "proof adduced" is the same in both forums. *Sweet Little Mex.*, 665 F.3d at 678.  It would create a new rule that sweeps in any case where the litigants overlap.  And even where there is "some risk of 'duplication' between the proceedings," that is not enough to overturn a district court—in a regular appeal.  *Id.* at 679 (affirming denial of first-to-file motion where "we cannot say that this risk [of duplication] was so great that the district court abused its discretion in moving forward. . . .").  Petitioners thus fail to show error under the heightened mandamus-review standard.

**3.      Including The Dismissed Antitrust Counterclaims Would Not Show A Substantial Overlap Between The Cases**

Petitioners fail to show that—even if the analysis should include the dismissed

antitrust claims—it was a clear abuse to discretion to deny transfer.  The pending California claims do not substantially overlap with the Texas claims.  Adding the dismissed California claims does not change the analysis.

First, the Texas case contains allegations that were not at-issue in California.  This includes allegations of anticompetitive conduct that occurred in Texas (including in the relevant market for IP phones), a conspiracy between Cisco and CDW, and allegations that Cisco locks-in customers and forecloses Cisco competitors due to the customers' limited IT budgets.  *See, e.g.*, App.536–37; App574–75 (providing example cites to Texas complaint, App.1–41).

Second, the Texas case includes claims and theories that were never asserted in California.  This includes Sherman Act Section 1 conspiracy claims against Cisco and CDW (who is not a party in California), an attempted monopolization claim based on Cisco's anticompetitive conduct in the IP phone market, and violations of Texas state antitrust laws (including based on Texas conduct).  *See, e.g.*, App.536–37; App574–75 (providing example cites to Texas complaint, App.1–41).

Third, the cases involve different parties.  The Texas case includes CDW (and new conspiracy allegations that involve CDW).  The California case, due to Cisco's counterfeit allegations, involves approximately 20 third-party defendants that are not parties in the Texas case.

These differences show that—even including the dismissed California

claims—there was no clear abuse of discretion in denying transfer.

Petitioners argue, without substantive analysis, that the Texas complaint asserts "the same claims" that Dexon asserted in California. Pet. at 9. But that is untrue, as both Judges below found when denying dismissal—"[t]he Court, having carefully considered the parties' arguments and the relevant case law, does not find the facts, and the legal standard used to assess the facts, identical in both lawsuits,"App.776— and provided examples:

- "[T]here are new claims and facts in this lawsuit which were not alleged in California," including new allegations regarding the Cisco/CDW conspiracy, the Texas bank, energy company, automobile dealership, the school district, global and U.S. IP phone markets, and limited IT budgets. App.772 (quoting Texas complaint); *see also* App.786 (explaining that Dexon's inter- and intra-band allegations "were not pleaded with this level of specify in the California Lawsuit"); App.800 (explaining that the Texas bank, automobile dealership, energy company, and school district allegations and "IT budget phenomenon" were "absent from the California Lawsuit").

- "Dexon pleads factual allegations here, not found in the California Lawsuit, to allege CDW and Cisco entered into a conspiracy that violated §§ 1 and 2 of the Sherman Act." App.775; *see also* App.900 (same).

Petitioners ignore these findings and ask this Court to overrule them. Petitioners, attempting to suggest an inconsistency, allege that, in the <u>transfer</u> orders (as opposed to its <u>dismissal</u> orders), "the district court correctly declined to accept" that Dexon's Texas claims were "distinguishable from the counterclaims it had filed in California." Pet. at 22. That is incorrect. The Court did not reach that question in the <u>transfer</u> orders because it did not need to: since the California antitrust claims

were <u>dismissed</u>, "the proper comparison is between Cisco's <u>pending</u> trademark infringement and counterfeiting claims in California and the Sherman Antitrust claims currently alleged by Dexon in this Court." App.731 (emphasis added).

Petitioners also wrongly claim that the Texas Court "admittedly" revisited the California Court's findings resulting in three "conflicting" rulings relating to (1) Dexon's tying theory; (2) Dexon's Sherman Act Section 2 monopolization theory; and (3) Dexon's antitrust injury. Pet. at 24–25. To the contrary, the District Court expressly found there was "no conflict" between its ruling and "substantive rulings of the California Court." App.933. The Court explained that would not "serve as a 'super appellate' court to the California Court" and that the California Court's "reasoning will not be revisited absent a highly compelling reason to do so, such as a difference in controlling law, citation to prior rulings of this Court, or substantive factual allegations not pleaded in the California Court." App.764 (quoting App.732 n.8). And the Texas Court did not revisit any of the California Court's holdings.

Regarding tying and monopolization, the Texas Court actually explained how Dexon's specific *Kodak*[7] "lock-in" theory and related allegations in Texas were not raised in California. App.799–813, App.814–816; *see also* App.932 (explaining that the Magistrate Judge "makes clear there are four new examples of alleged

---

[7] *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992).

anticompetitive conduct [in Texas] involving tying in this complaint which were not alleged in Dexon's California Counterclaims . . . and the 'IT budget phenomenon' was also absent from the California Lawsuit"); App.933 ("The Magistrate Judge found the California Court had not ruled on a *Kodak* 'lock-in' theory of tying liability, especially considering the new substantive factual allegations pleaded in this case."). For antitrust injury, the Court focused on (1) new allegations of a conspiracy between Cisco and CDW (which were not plead in California) and (2) this Circuit's antitrust-injury law. App.785–789; App.818–824; App.922–925.

The District Court did not include findings in the transfer orders that included the dismissed California antitrust claims in the analysis. Even if it should have, Petitioners fail to show that it would have been a clear abuse of discretion for the Court to deny transfer. And, as explained below, the most Petitioners are entitled to is a remand—and not an order directing transfer.

### C.    Petitioners' Policy Arguments Do Not Warrant Mandamus

Petitioners primarily "resort to policy arguments" rather than a faithful substantial-overlap analysis under the first-to-file rule, as they did below. App.892. These arguments—directed to economy, consistency, and comity—as general concepts, rather than the actual facts of the case, lack merit.

On comity and consistency, the District Court explained that there was "no conflict" between its rulings and "substantive rulings of the California Court,"

App.933, and the Court expressly declined to "serve as a 'super appellate' court to the California Court, " App.764 (quoting App.732 n.8). The Court also concluded there were "no risks of inconsistent judgments seeing as the first-filed antitrust counterclaims were dismissed without prejudice." App.729. Petitioners attempt to manufacture conflicting rulings, but, respectfully, that is not what happened.

Similarly, transfer would harm, not promote, judicial economy. This case addresses claims, factual allegations, and parties that were never before the California Court. The apparent purpose of transfer is so Petitioners could litigate these issues in California, essentially trying to rewrite history to force this case to be filed there in the first instance. The Texas court is now extensively familiar with these issues. Petitioners identify no judicial savings counteracting the cost of duplicate work and new delay in, essentially, filing this as a new case in California.

### D.    At Most, Petitioners Are Entitled To A Remand—Not Transfer

Even if this Court holds that it was a clear abuse of discretion to not include the dismissed California claims in the first-to-file analysis, transfer is not the remedy. "As a court for review of errors," this Court does not "decide facts or make legal conclusions in the first instance[.]" *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991)). Because this Court sits as "a court of review, not of first view," the "the normal course would be to remand for the district court" to address the issue first. *Id.* (citation omitted).

23

That approach, should the Court find it necessary, would apply here.  The substantial-overlap analysis is fact-intensive and suited for the District Court to address first (rather than this Court through mandamus fact-finding)—"the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'" *Sweet Little Mex.*, 665 F.3d at 678 (quoting *Save Power Ltd.*, 121 F.3d at 951).  In addition, as the District Court recounted, "a finding of substantial overlap does not end the inquiry"—transfer under the first-to-file rule only applies in "the absence of compelling circumstances."  App.724 (quotation omitted); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("In the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case.").  These are issues for the District Court, not this Court.

## II.     Petitioners Fail To Show A Lack Of Adequate Means Of Obtaining Relief

The party seeking mandamus must show that it has "no other adequate means of obtaining relief," *Paxton*, 60 F.4th at 255, "a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process," *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004).  Petitioners fail to meet that standard.

This Court's decisions show that the regular appeal process is an adequate means for Petitioners to raise their first-to-file arguments.  <u>All</u> of this Court's first-to-file cases cited by the parties came through the regular appeals process, either

after entry of a final decision[8] or an injunction.[9]  This Court has had no issue reviewing first-to-file orders in those cases.  That includes vacating the merits orders after holding that denying transfer under the first-to-file rule was an abuse of discretion (*e.g.*, *Save Power*, *West Gulf Marine*, *Mann*, and *Sutter*) and affirming transfer denials (*e.g.*, *Sweet Little Mexico*).  A regular appeal is adequate to address Petitioners' challenge, just as it was in <u>all</u> of the first-to-file cases the parties cite.

Petitioners do not address those cases.  They claim that mandamus is appropriate, but they provide the Court an abbreviated quote: it "is the prescribed vehicle for reviewing rulings on transfers of cases <u>pursuant to 28 U.S.C. § 1404(a)</u>." Pet. at 28 (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 423 (5th Cir. 2022) but omitting "pursuant to 28 U.S.C. § 1404(a)" from quote) (emphasis added).  And they rely on a case from another Circuit (*In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1312–

---

[8] *Sweet Little Mexico*, 665 F.3d at 673 (appeal from a grant of summary judgment); *Save Power Ltd.*, 121 F.3d at 948 (same); *Cadle*, 174 F.3d at 600 (appeal from grant of motion to dismiss); *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 915 (5th Cir. 1997) (appeal from entry of judgment confirming an arbitration award).

[9] *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 722 (5th Cir. 1985) (appeal from the grant of a preliminary injunction); *Mann*, 439 F.2d at 404 (appeal from a grant of a temporary injunction). The only Fifth Circuit case that Dexon is aware of that involved a mandamus petition under the first-to-file rule is *Amerijet*—which involved <u>both</u> an appeal from the grant an anti-suit injunction and an accompanying mandamus petition.  785 F.3d 967, 969 (5th Cir. 2015).  After affirming the first-to-file ruling in the context of the injunction, the Court denied the petition for a writ of mandamus.  *Id.* at 973 n.2.

13 (Fed. Cir. 2020)) where (1) the "no other adequate means" element was unchallenged;[10] (2) the case addressed Section 1404(a) as an exceptional circumstance within the first-to-file rule; and (3) the Court did not order transfer— it vacated the order to allow the district court to consider the legal issues "in its renewed analysis." *Id.* at 1313.

These arguments do not show that mandamus is the proper vehicle to review this first-to-file order. This is not a Section 1404(a) case and, as the District Court found, "there are no risks of inconsistent judgments seeing as the first-filed antitrust counterclaims were dismissed without prejudice." App.730. This means that Petitioners' basis for seeking mandamus—to "prophylactically" protect against inconsistent judgments, Pet. at 29 (quoting *Cadle*, 174 F.3d at 604)—does not apply.

Petitioners also do not explain why a reconsideration request was not an adequate means for them to obtain relief. Petitioners request mandamus based on arguments that the District Court "did not address." Pet. at 11, 13. Petitioners did not raise those arguments below and thus waived them. But Petitioners also do not explain why they failed to raise those arguments in a request for reconsideration, which would have given the District Court an opportunity to address these new

---

[10] *See, e.g.*, Cameron Int'l Corp.'s Response to Nitro Fluids L.L.C.'s Petition for Writ Mandamus (Dkt. 14-1), *In re: Nitro Fluids L.L.C.*, Case No. 2020-142 (Fed. Cir. Aug. 7, 2020) (defending district court decision under clear-abuse-of-discretion standard and not addressing adequacy of mandamus review).

arguments before Petitioners filed a mandamus petition in this Court.

Petitioners also did not attempt to seek an interlocutory appeal under § 1292 regarding Court's interpretation of *Cadle*. *See, e.g., Sawgrass Techs., Inc. v. Texas Original Graphics, Inc.*, No. 06-1190, 2007 WL 634434, at *3 (Fed. Cir. Mar. 2, 2007) (non-precedential) (dismissing appeal of order transferring case under first-to-file rule where "the record lacks a final judgment, a certification of a partial final judgment under Fed. R. Civ. P. 54(b), or a certification under 28 U.S.C. § 1292(b)").

## III.     Mandamus Is Not Otherwise Appropriate Under These Circumstances

Because "the writ of mandamus is 'one of 'the most potent weapons in the judicial arsenal[,]'" *Cheney*, 542 U.S. at 380 (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)), the Court "must be satisfied that the writ is appropriate under the circumstances"—even if the other factors are met, *id.* at 381. Petitioners have not made that showing.

### A.     Dexon Did Not Engage In Abusive Litigation Tactics

Petitioners are wrong that Dexon engaged in "abusive litigation tactics" or that mandamus is necessary to deter "abusive litigation conduct." Pet. at 31–32. The California Court dismissed Dexon's antitrust counterclaims without prejudice and expressly allowed  Dexon to amend.  Those claims were undisputedly permissive counterclaims, meaning that they could have been asserted in the California case or in a new action. *See, e.g.*, Fed. R. Civ. P. 13(a), (b); § 1403 Purpose

and Scope of Rule 13, 6 Fed. Prac. & Proc. Civ. § 1403 (3d ed.) ("If defendant's claim is independent of plaintiff's claim, however, then defendant has the option of bringing it in a separate suit or of asserting it under Rule 13(b) as a permissive counterclaim.").[11] Similarly, a dismissal without prejudice allows the plaintiff to file a complaint in the same court or a different court. *See, e.g.*, *Hentz v. Cabana*, 35 F.3d 559 (5th Cir. 1994) ("[D]ismissal without prejudice under Rule 41(b) . . . does not bar a second suit[.]") (citing § 2373 Involuntary Dismissal—Effect of Dismissal, 9 Fed. Prac. & Proc. Civ. § 2373 (4th ed.)).[12] No law required Dexon to bring <u>all</u> of its potential claims against Cisco in California, and Petitioners erase the distinction between permissive counterclaims (which can be brought in another action) and compulsory counterclaims (which must be plead in response to the original complaint). Fed. R. Civ. P. 13.

Petitioners' claim that, without mandamus, "other litigants will have an incentive to shop for a more favorable forum after their claims are dismissed without prejudice" (*id.* at 31) is also wrong. Petitioners ignore that Dexon's Texas claims

---

[11] *See also* § 1420 Permissive Counterclaims—In General, 6 Fed. Prac. & Proc. Civ. § 1420 (3d ed.) ("[A] party will not be precluded from bringing a claim in a subsequent action because of a failure to present it as a counterclaim under Rule 13(b).").

[12] *Cf. Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506, (2001) (holding that a dismissal <u>with</u> prejudice issued in one court may not be sufficient to bar a second lawsuit brought in other courts).

are different in substance than the dismissed California claims—a fact the District Court recognized when it rejected Petitioners' *res judicata* and collateral estoppel arguments. App.772 (finding actions were not based on "the same nucleus of operative facts" under *res judicata* because "there are new claims and facts in this lawsuit which were not alleged in California"); App.898 (similar); App.900 (finding that collateral estoppel inapplicable because "Dexon pleads factual allegations here, not found in the California Lawsuit"); App.776 (similar). And due to extensive Texas-based activities, the Texas Court is a proper jurisdiction to bring this case (and the propriety of jurisdiction and venue is unchallenged here). Petitioners ignore those facts and create a fiction.

### B.     Petitioners Seek Mandamus For An Improper Purpose

Petitioners seek mandamus for an improper purpose—to attempt a second bite at dismissal of Dexon's Texas antitrust claims. Presumably, if the Court orders this case transferred to California, they will yet again reargue dismissal, urging the California Court to rule differently on Dexon's Texas antitrust claims. *See, e.g.*, Pet. at 4; *see also id.* at 24 (asserting that "inconsistent rulings have already resulted"). Petitioners do not identify <u>any</u> other reason for the transfer.

That transfer will delay the resolution of the merits of Dexon's antitrust claims and will be an inefficient use of resources. In Texas, the parties are set for trial on January 22, 2024. Amended Docket Control Order (Dkt. 55), *Dexon Computer v.*

*Cisco Sys., Inc.*, No. 5:22-CV-52 (E.D. Tex. Mar. 23, 2023). These claims and allegations were never in California, and the separate claims pending in California do not have a trial date and pretrial practice is scheduled to extend into next year. Joint Case Management Statement and Order (Dkt. 161), *Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 3:20-CV-04926 (N.D. Cal. Jan. 9, 2023). That schedule would potentially get further delayed if the Court adds Dexon's antitrust claims to the case (assuming consolidation; a new case would have a brand-new schedule and a potential trial extending long past January, 2024[13]). Transfer will be inefficient because the parties will relitigate issues the Texas Court already decided.

### C. The Transfer Order Does Not Raise Any Issues With An Importance Beyond This Case

Finally, despite Petitioners' claim otherwise, the transfer order does not raise issues with "an importance beyond th[is] immediate case." Pet. at 29 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008)). First, Petitioners have sought no interlocutory review under Section 1292 of a "controlling question of law as to which there is substantial ground for difference of opinion." Second, this case has an unusual set of facts. Dexon asserted permissive antitrust counterclaims in

---

[13] The median time-to-trial in civil cases in the Northern District of California has been between 22 and 37 months after the filing of the complaint from March, 2018 to March, 2023). *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf at p. 66.

response to Cisco's intellectual property claims. After the Court dismissed those counterclaims without prejudice and provided leave to amend, Dexon filed an antitrust action in Texas with new claims, factual allegations, and parties. That unique procedural posture is unlikely to arise in future cases.

Petitioners claim that the orders below will allow plaintiffs to file a lawsuit in one forum and, should their case get dismissed, re-file the same claims and allegations in a more favorable forum. That is not what happened here and it is an incorrect reading of the District Court's orders. And should such a case arise where a plaintiff truly re-files the same claims in a second court after losing in the first court (which is permitted under the Federal Rules of Civil Procedure), this Court can deal with that situation then. But the District Court's orders do not provide a "roadmap" for that strategy because it is not what happened in this case.

## CONCLUSION

Dexon respectfully requests that the Court deny the Petition.


Dated:  May 26, 2023                    Respectfully submitted,

                                        By:   */s/Christian Hurt*
                                              Christian Hurt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2023, a true and correct copy of the foregoing Petition for Writ of Mandamus was served via electronic filing with the Clerk of Court and all registered ECF users.

Upon acceptance by the Court of the e-filed document, 7 paper copies will be filed with the Court within the time provided in the Court's rules via Federal Express.

Dated:  May 26, 2023                          Respectfully submitted,

                                              By:    */s/Christian Hurt*
                                                     Christian Hurt

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.  Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 7,707 words.

Dated:  May 26, 2023                          Respectfully submitted,

                                                          By:    */s/Christian Hurt*
                                                                    Christian Hurt